**ORAL ARGUMENT NOT YET SCHEDULED**
No. 15-1489

# In The
# United States Court of Appeals
# for the District of Columbia Circuit

SIERRA CLUB,

*Petitioner*,

v.

UNITED STATES DEPARTMENT OF ENERGY,

*Respondent.*

On Petition for Review of Orders of the
Department of Energy Office of Fossil Energy

**BRIEF FOR INTERVENOR
AMERICAN PETROLEUM INSTITUTE**

STACY LINDEN
BEN NORRIS
AMERICAN PETROLEUM INSTITUTE
1220 L Street, N.W.
Washington, D.C. 20005
(202) 682-8000

CATHERINE E. STETSON
JANNA R. CHESNO
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for American Petroleum Institute*

June 7, 2016

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A. PARTIES

1. The parties to the proceeding are listed in Petitioner's opening brief.

2. Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, the American Petroleum Institute (API) states that it is a not-for-profit trade association based in Washington, D.C. charged with promoting the interests of its over 650 members in the United States. API is not a publicly held corporation. It has no parent companies, and no companies have a ten percent or greater ownership interest in API.

## B. RULINGS UNDER REVIEW

References to the rulings at issue appear in the previously submitted briefs of Petitioner and Respondent.

## C. RELATED CASES

The related cases are listed in Respondent's brief.

*/s/ Catherine E. Stetson*
CATHERINE E. STETSON
JANNA R. CHESNO
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

June 7, 2016

ii

## CERTIFICATE AS TO NECESSITY FOR A SEPARATE BRIEF

Pursuant to Circuit Rule 28(d)(4), I hereby certify that the reasons for submitting this short separate brief on behalf of Intervenor American Petroleum Institute are as set forth in API's February 22, 2016 motion, which was granted by order of this Court on February 29, 2016.

                                    */s/ Catherine E. Stetson*
                                    CATHERINE E. STETSON
                                    JANNA R. CHESNO
                                    HOGAN LOVELLS US LLP
                                    555 Thirteenth Street, N.W.
                                    Washington, D.C. 20004
                                    (202) 637-5491
                                    cate.stetson@hoganlovells.com

June 7, 2016

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND
     RELATED CASES ........................................................................................ ii

CERTIFICATE AS TO NECESSITY FOR A SEPARATE BRIEF ...................... iii

TABLE OF AUTHORITIES ................................................................................... v

GLOSSARY ............................................................................................................ vi

JURISDICTIONAL STATEMENT ........................................................................ 1

INTRODUCTION .................................................................................................... 1

ISSUES PRESENTED FOR REVIEW ................................................................... 2

STATUTES AND REGULATIONS ....................................................................... 2

STATEMENT OF FACTS ...................................................................................... 2

STANDARD OF REVIEW ..................................................................................... 5

SUMMARY OF ARGUMENT ............................................................................... 5

ARGUMENT ........................................................................................................... 6

I.    DOE FULLY COMPLIED WITH NEPA AND THE NGA
        AND IS ENTITLED TO SUBSTANTIAL DEFERENCE ........................... 6

III.   U.S. NATURAL GAS IS A GLOBAL AND HIGHLY
        REGULATED COMMODITY ...................................................................... 9

CONCLUSION ...................................................................................................... 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

**CASES:**

*Border Pipe Line Co. v. Fed. Power Comm'n*,
    171 F.2d 149 (D.C. Cir. 1948) .................................................................. 10

*\*Coal. for Responsible Growth & Res. Conservation v. FERC*,
    485 Fed. Appx. 472, 2012 WL 2097249 (2d Cir. June 12, 2012) ............... 1

*Kleppe v. Sierra Club*,
    427 U.S. 390 (1976) .................................................................................... 8

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm*,
    463 U.S. 29 (1983) ...................................................................................... 8

**STATUTE:**

42 U.S.C. §§ 4321 *et seq.* ................................................................................. vi

**ADMINISTRATIVE MATERIALS:**

81 Fed. Reg. 35,824 (June 3, 2016) .................................................................. 4

81 Fed. Reg. 35,943 (June 3, 2016) .................................................................. 4

81 Fed. Reg. 35,622 (June 3, 2016) .................................................................. 4

80 Fed. Reg. 56,577 (Sept. 18, 2015) ................................................................ 4

78 Fed. Reg. 58,416 (Sept. 23, 2013) ................................................................ 4

*Phillips Petroleum Co.*,
    37 F.P.C. 777, 1967 WL 3352 (Apr. 19, 1967) ........................................ 10

# GLOSSARY

| | |
|---|---|
| API | American Petroleum Institute |
| Authorization Order | *Freeport LNG Expansion, L.P.*, FE Docket No. 11-161-LNG, DOE/FE Order No. 3357-B (2014) |
| DOE | The U.S. Department of Energy Office of Fossil Energy |
| EIS | Environmental Impact Statement |
| EPA | Environmental Protection Agency |
| FERC | The Federal Energy Regulatory Commission |
| Freeport | Freeport LNG Expansion, L.P., FLNG Liquefaction, LLC, FLNG Liquefaction 2, LLC and FLNG Liquefaction 3, LLC |
| LNG | Liquefied Natural Gas |
| NEPA | National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* |
| Rehearing Order | *Freeport LNG Development, L.P.*, FE Docket No. 11-161-LNG, DOE/FE Order No. 3357-C (2015) |

**JURISDICTIONAL STATEMENT**

API adopts the jurisdictional statement set forth in Respondent DOE's brief.

**INTRODUCTION**

This case involves a matter of paramount significance to API and its natural gas producer and LNG interests. DOE does not regulate upstream production activities. Freeport does not operate in the upstream production sector. Yet in this and other cases, Petitioner has challenged DOE and FERC's environmental reviews on grounds that both agencies failed to adequately analyze upstream production activities. Many API members who are not regulated by DOE or FERC, but whose upstream production activities are heavily regulated at the state level and by other federal agencies, thus find themselves the ultimate target of Petitioner Sierra Club's persistent litigation.[1]

Sierra Club's litigation efforts are a strategic component of its overall campaign against U.S. fossil fuels, which it has branded "Beyond Natural Gas,"

---

[1] In addition to the several related cases identified in this brief, *see Coal. for Responsible Growth and Res. Conservation v. FERC*, 485 Fed. Appx. 472, 2012 WL 2097249 (2d Cir. Jun. 12, 2010) (rejecting Sierra Club's petition for review raising similar issues). Moreover, Sierra Club has intervened in nearly all pending LNG-export-related dockets at DOE, raising identical arguments.

"Beyond Coal" and "Beyond Oil." [2] As these names suggest, Petitioner is not ultimately concerned with the fine points of federal agencies' procedural NEPA obligations. Rather, seeking to impose its own policy preferences on the agencies charged with implementing federal energy policy, Sierra Club seeks to halt the approval of new natural gas infrastructure. For the reasons set forth below, API supports DOE's environmental review of exports from the Freeport project, which satisfied the NGA and NEPA in all its particulars. The petition for review should be denied.

## ISSUES PRESENTED FOR REVIEW

API adopts the issues presented for review as set forth in DOE's brief.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are contained in the DOE and Freeport briefs.

## STATEMENT OF FACTS

API agrees with the facts set forth in the DOE and Freeport's briefs and will not repeat those here. Instead, it offers a brief recitation of facts and issues particular to API, and which may be of use to this Court.

---

[2] *See* Sierra Club website *at* http://www.sierraclub.org/beyond-fossil-fuels (last reviewed June 7, 2016).

2

For nearly a hundred years, API has served as the preeminent national trade association for the oil and natural gas industry in the United States. API is the largest trade association for the industry; it has more than 650 members, including owners and operators of LNG import and export facilities in the United States and around the world, as well as owners and operators of LNG vessels and manufacturers of essential technology and equipment used all along the natural gas value chain. API publishes and regularly revises more than 600 industry standards, discussed further below, and many of its members have extensive experience developing and producing America's natural gas resources in a safe and environmentally responsible manner.

API represents its members' interests in administrative and legal proceedings. In furtherance of that mandate, API has participated extensively in the ongoing administrative processes before DOE relating to exports of LNG, providing comments in Freeport's proceeding and on the studies that Petitioner's brief attacks in this case.

API also represents and protects its members' interests relating to their activities subject to review and regulation by the many regulatory entities in addition to DOE and FERC, such as drilling, production, and processing—all of which are subject to stringent state and federal controls and peer-reviewed industry

3

standards and best practices. Operators must comply with numerous and evolving federal regulations covering (to name a few) air emissions, produced water disposal, worker safety, and wildlife/endangered species impacts on federal, state, and private land, discussed further herein. For example, just last week, the Environmental Protection Agency (EPA) published a package of regulatory actions aimed at limiting emissions of methane and other pollutants from sources in the oil and gas sector. *See* Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources, 81 Fed. Reg. 35,824 (June 3, 2016) (final rule). EPA had also previously amended its regulations on air emissions from natural gas wells in 2013, *see* 78 Fed. Reg. 58,416 (Sept. 23, 2013). *See also, e.g.*, Federal Implementation Plan for True Minor Sources in Indian Country in the Oil and Natural Gas Production and Natural Gas Processing Segments of the Oil and Natural Gas Sector, 81 Fed. Reg. 35,943 (June 3, 2016); Source Determination for Certain Emission Units in the Oil and Natural Gas Sector, 81 Fed. Reg. 35,622 (June 3, 2016); Draft Control Technique Guidelines for the Oil and Natural Gas Industry, 80 Fed. Reg. 56,577 (Sept. 18, 2015).

API also develops technical standards and best practices accredited by the American National Standards Institute, a not-for-profit organization that establishes requirements for U.S. standards-setting organizations, through a broad-

4

based, formal consensus process in which companies, regulators, academics, environmental groups, and other stakeholders participate. Federal regulations currently cite to over one hundred API standards, and thousands of state regulations have cited nearly two hundred API standards in all. And these standards, which have contributed to a decades-long safety record for the industry, include many standards specific to hydraulic fracturing and natural gas well construction—upstream activities that the Sierra Club seeks to collaterally attack through NEPA-based challenges to downstream gas export facility approvals.

The Court could not glean any of this from Petitioner's brief. Quite the contrary: Petitioner has repeatedly sought to undermine public confidence in the entire natural gas industry sector by implying that there exists a Wild West of unregulated upstream natural gas production activity that receives little to no attention from other federal agencies and state regulators. That is false.

## STANDARD OF REVIEW

API adopts the standard of review set forth in the DOE and Freeport briefs.

## SUMMARY OF ARGUMENT

The DOE correctly determined, after its own independent review of FERC's 978-page Environmental Impact Statement, that NEPA does not require a hypothetical and speculative assessment of upstream natural gas production

5

activities associated with Freeport's project. DOE's determination is entitled to substantial deference. Indeed, DOE went further than what NEPA, or even arguably the NGA requires, by preparing a thorough Environmental Addendum and Life Cycle Analysis to accompany the EIS.

Petitioner intimates in its briefing that upstream natural gas production is an otherwise lawless and unregulated anarchy. That is flatly wrong. And Petitioner's suggestion that NEPA and NGA review should further expand to capture and quantify global market conditions associated with U.S. LNG exports—despite decades of U.S. exports of natural gas through facilities permitted pursuant to the NGA—should be rejected.

## ARGUMENT

### I. DOE FULLY COMPLIED WITH NEPA AND THE NGA AND IS ENTITLED TO SUBSTANTIAL DEFERENCE.

API supports and joins in Intervenor Freeport's brief. API also supports Respondent's brief.

In the challenged orders, DOE properly assessed the reasonably foreseeable indirect and cumulative impacts associated with the potential for any induced gas production, coal consumption and lifecycle GHG emissions indirectly attributable to exports from Freeport's project. *See* DOE Br. 30-33; Freeport Br. 14-36. DOE also participated as a cooperating agency in Freeport's FERC proceeding. And in

recognition of its independent NEPA obligations, DOE conducted its own review of FERC's 978-page EIS, and issued its order approving Freeport's proposed exports conditioned on compliance with all 83 of the environmental conditions imposed by FERC. JA ___ [Authorization Order 5]. DOE correctly declined to engage in an endless chain of market-driven speculation as part of its NEPA analysis; NEPA requires no such freewheeling and hypothetical inquiry, and this Court's long-standing NEPA precedent confirms as much. *See* DOE Br. 42-45.

In fact, DOE went beyond what NEPA requires by preparing an Environmental Addendum and Life Cycle Analysis, in order to respond to comments regarding the impact of upstream and downstream transport of LNG. What DOE ultimately confirmed is in line with the conclusion FERC reached: DOE cannot predict these impacts with any reasonable certainty as they relate to LNG exports, DOE Br. 38, and the rapid development of unconventional natural gas would continue with or without LNG exports. DOE Br. 17.

Having first complained that FERC should conduct the broader review, the Sierra Club now is not satisfied with DOE's expanded analysis; it prefers instead to question DOE's balancing of factors and quibble with whether DOE properly quantified environmental effects with mathematical certainty.

It is no state secret that the Sierra Club's NEPA strategy is designed to shift federal policy away from natural gas production. But NEPA, at its core, is a

7

process-related statute; it does not endorse any particular federal energy policy, and it does not direct any particular substantive outcome. NEPA requires only that DOE take a "hard look" at the environmental impacts of a particular action, Freeport Br. 3, and DOE and Freeport have explained the breadth, depth, and detail of that "hard look" here. Where, as here, DOE's review of Freeport's application considers all of the reasonably foreseeable effects capable of meaningful discussion, DOE's "determination of the extent and effect of" cognizable impacts "is a task assigned to the special competency of the appropriate agencies[,]" *Kleppe v. Sierra Club*, 427 U.S. 390, 414 (1976), and is entitled to substantial deference.

Sierra Club's NGA claims similarly fail. Sierra Club has provided no legal support for its claim that the NGA requires a determination of "what the costs weigh." Rather, its sole proffered case (Pet. Br. 77) supports a finding in DOE's favor. In *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm*, 463 U.S. 29, 52 (1983), the Supreme Court noted:

> It is not infrequent that the available data do not settle a regulatory issue, and the agency must then exercise its judgment in moving from the facts and probabilities on the record to a *policy conclusion*. Recognizing that policymaking in a complex society must account for uncertainty, however, does not imply that it is sufficient for an agency to merely recite the terms "substantial uncertainty" as a justification for its actions. As previously noted, the agency must explain the evidence which is available, and must offer a "rational connection between the facts found and the choice made."

8

(Citation omitted.) The record here clearly meets and exceeds these standards. DOE did not decline outright to review environmental impacts because of any "uncertainty." Quite the opposite. At Sierra Club's urging, DOE undertook a broader environmental review, responding to over 40,000 comments on the Environmental Addendum alone, including those of Sierra Club and API. JA ___ [Authorization Order 46]. In both the Environmental Addendum and the Life Cycle Analysis, DOE evaluated all available studies and comments, and balanced those impacts with benefits, including un-quantified geopolitical benefits. JA ___ [Authorization Order 95-96]. DOE rationally connected its finding – that Freeport's project has not been shown to be inconsistent with the public interest – with the fully developed record in this proceeding. DOE's decision should be upheld.

## II.  U.S. NATURAL GAS IS A GLOBAL AND HIGHLY REGULATED COMMODITY.

Petitioner contends that the recent "rush" to export United States' new supplies of unconventional natural gas is likely to increase the environmental impacts associated with domestic gas drilling and production, Pet. Br. 34-36, and that the Commission's NGA and NEPA review (and apparently this Court's precedent) must expand along with the market. That is wrong.

U.S. natural gas is already, and has long been, a global commodity. The

9

Nation's natural gas markets have been linked by pipeline to international demand sources for more than seventy years. In fact, one of the seminal cases in this circuit regarding authority to regulate interstate natural gas pipelines involved a pipeline that received its authorization to export natural gas to Mexico in 1942. *Border Pipe Line Co. v. Fed. Power Comm'n*, 171 F.2d 149 (D.C. Cir. 1948). Alaskan natural gas has been authorized for export as LNG to Japan since 1967. *Phillips Petroleum Co.*, 37 F.P.C. 777, 1967 WL 3352 (Apr. 19, 1967). And DOE's regulations, although originally intended to address imports, have been interpreted and applied to exports for decades. JA ___ [Authorization Order 10 (citing *Phillips Alaska Natural Gas*, DOE Order No. 1473, at 14 (citing *Yukon Pacific Corp.*, DOE Order No. 350, Order Granting Authorization to Export Liquefied Natural Gas from Alaska, 1 FE ¶ 70,259, at 71,128 (1989)))].

As noted in the related Freeport case before this Court (14-1275), significant volumes of natural gas are being exported to Canada and Mexico, and U.S. LNG import terminals re-export previously imported cargoes of LNG globally.[3] Even the exhibits attached to Petitioner's protest in this proceeding demonstrate that both Canada and Mexico engage in significant natural gas trade with the U.S. via

---

[3] API Freeport Br. (D.C. Cir. No. 14-1275) at 8 (citing http://energy.gov/sites/prod/files/2014/04/f15/4th13ng.pdf).

10

pipeline, JA ___ [Sierra Club Comments, Ex. 3 at 2] and that the U.S. exported 66,194 million cubic feet of LNG to nine different countries in 2011. *See* JA ___ [Sierra Club Comments, Ex. 69 at 9].

Further, natural gas *production*, although not regulated by DOE or FERC, has been regulated by other federal agencies such as the EPA, regulated at the state level, and subject to consensus-based technical standards for decades. For example, the EPA's recent announcement of its package of final rules to limit methane and other emissions from the oil and natural gas sector expressly advance the very elements of the President's Climate Action Plan that Sierra Club cites in its brief. Pet. Br. 35-37. The Sierra Club conveniently ignores all these facts, instead contending that the outcome it seeks is warranted by purportedly new circumstances.

Neither NEPA nor the NGA requires an analysis of global demand for natural gas and its planetary-induced effects any more today than it did when these statutes were passed, and this Court should not lightly reverse decades of precedent to require that inquiry now. And even assuming (though API does not concede) that a reliable analysis is even possible of global market trends—one accounting for, among other things, displacement, governmental changes, price elasticity, and demand growth—there is no reliable way to conduct such an analysis on a *project-*

11

*specific* basis. As DOE's Order explains, "The rule of reason counsels that agencies are not required to address remote or speculative consequences, where insufficient information is available to permit meaningful consideration." JA ___ [Rehearing Order 15]. And where, as here, DOE conducted additional analysis to inform its public interest inquiry, and exercised its reasonable discretion and judgment in making its public interest determination, its orders should be upheld.

## CONCLUSION

For the foregoing reasons, and those in DOE's and Freeport's briefs, the petition for review should be denied.

Respectfully submitted,

*/s/ Catherine E. Stetson*
CATHERINE E. STETSON
JANNA R. CHESNO
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

STACY LINDEN
BEN NORRIS
AMERICAN PETROLEUM INSTITUTE
1220 L Street, N.W.
Washington, D.C. 20005
(202) 682-8000

*Counsel for American Petroleum Institute*

June 7, 2015

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and D.C. Circuit Rule 32(a), I hereby certify that the foregoing brief was produced using the Times New Roman 14-point typeface and contains 2,428 words.

>                     */s/ Catherine E. Stetson*
>                     Catherine E. Stetson
>                     HOGAN LOVELLS US LLP
>                     555 Thirteenth Street, N.W.
>                     Washington, D.C. 20004
>                     (202) 637-5491
>                     cate.stetson@hoganlovells.com

June 7, 2016

## CERTIFICATE OF SERVICE

I certify that on June 7, the foregoing Brief for Intervenor American Petroleum Institute was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users. I also certify that I caused to be delivered to the Court eight copies of the brief, pursuant to D.C. Circuit Rule 31(b).

*/s/ Janna R. Chesno*

JANNA R. CHESNO
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-6461
janna.chesno@hoganlovells.com